UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOCELYN ALLEN, *et al.*, <br><br>   Plaintiffs, <br><br>   v. <br><br> THE BOEING COMPANY, *et al.*, <br><br>   Defendants. | CASE NO. C14-0596RSM <br><br> ORDER GRANTING PLAINTIFFS' MOTION TO REMAND |

## I.   INTRODUCTION

This matter comes before the Court after remand from the Ninth Circuit Court of Appeals and on Plaintiffs' Motion to Remand Class Action to State Court. Dkts. #46 and #58. Plaintiffs argue that this Court lacks jurisdiction because this action is not a removable mass action under the Class Action Fairness Act ("CAFA"), specifically because it is subject to the "local controversy" exception to the Act. *Id.* Defendant The Boeing Company ("Boeing")[1] argues that Plaintiffs cannot satisfy all of the elements of the "local controversy" exception, particularly because they fail to demonstrate that Defendant Landau Associates' ("Landau") conduct is a significant basis for their claims and that they seek significant relief from Landau as compared to Boeing. Dkt. #65. Landau joins in Boeing's opposition. Dkt. #66. For the

---

[1] Boeing previously noted that Boeing Commercial Airplanes ("BCA") was also named as a separate Defendant but argues that, as a division of the Boeing Company, it is not a separate entity subject to suit. The Court refers to both Defendants collectively as "Boeing."

ORDER
PAGE - 1

reasons set forth below, the Court disagrees with Defendants and GRANTS Plaintiffs' Motion to Remand.

## II. BACKGROUND

On November 22, 2013, 108 Plaintiffs filed an action in King County Superior Court against Boeing, Landau, and 50 John Does. The Complaint was not served on the Defendants at that time. *See* Dkt. #1 at ¶ 1. On March 21, 2014, prior to service on any Defendants, Plaintiffs amended the complaint to add eight additional Plaintiffs. *Id.* at 2. Boeing was served with the Amended Complaint on April 3, 2014. *Id.* Landau was not served until after the case was removed to this Court.[2] Dkts. #36 and #37.

In their Amended Complaint, Plaintiffs allege that they incurred property damage as a result of groundwater contamination by hazardous chemicals at and around a Boeing fabrication plant in Auburn, Washington, from the 1960s to the present. Dkt. #1, Ex. A at ¶¶ 4.1–4.2, 4.7–4.8 and 4.11. They further allege that Boeing and its environmental-remediation contractor, Landau, are liable for negligently investigating, remediating, and cleaning up the contamination and for failing to warn Plaintiffs of the contamination. *Id.* at ¶¶ 4.4, 4.15 and 4.17. Based on these allegations, Plaintiffs assert state law claims of negligence, nuisance, and trespass against Boeing and Does 1–25, and negligence against Landau and Does 26-50. *Id.* at ¶¶ 5.2, 5.9, 5.13 and 5.24.

On April 22, 2014, Boeing removed the action to this Court. Dkt. #1. Boeing asserted federal jurisdiction on two independent bases: diversity jurisdiction and jurisdiction over mass actions under CAFA. Dkt. #1 at 4-5. With respect to diversity jurisdiction, Boeing alleged that

---

[2] After this Court granted Plaintiffs' prior motion to remand, Plaintiffs moved in state court for leave to file a Second Amended Complaint to add an additional 82 plaintiffs. Dkt. #58 at 2. The state court granted the motion on February 27, 2015. *Id.* However, according to Boeing, Plaintiffs never filed or served a Second Amended Complaint. Dkt. #65 at 2 fn. 2. The Court also notes that no Second Amended Complaint has been filed in this Court.

ORDER
PAGE - 2

Landau had been fraudulently joined, and therefore its domicile (Washington State) could be ignored for jurisdictional purposes. *Id.* Plaintiffs then moved to remand to state court. Dkt. #26. Plaintiffs argued that Landau had not been fraudulently joined, and therefore diversity jurisdiction did not exist, and that this Court lacked jurisdiction based on two exceptions to CAFA – the "local single event" exception and the "local controversy" exception. Dkt. #26.

On September 23, 2014, this Court granted Plaintiff's motion to remand, finding that the "local single event" exception applied and therefore there was no jurisdiction under CAFA, and that Landau had not been fraudulently joined so the Court had no diversity jurisdiction. Dkt. #41. This Court did not address Plaintiffs' argument about the "local controversy" exception. *Id.* Defendants then appealed to the Ninth Circuit Court of Appeals. Dkt. #44.

On March 2, 2015, in a 2-1 Opinion, the Ninth Circuit Court of Appeals affirmed in part and vacated in part the Court's Order granting remand to state court, and remanded the matter back to this Court. Dkt. #46. The Court of Appeals affirmed this Court's determination that Boeing failed to show that Landau had been fraudulently joined. *Id.* at 4. However, the Court of Appeals also found that Plaintiffs' action does not come within the "local single event" exception to CAFA, and therefore the Court erred in remanding the case on that basis. *Id.* Finally, the Court determined that this Court should address Plaintiffs' "local controversy" arguments in the first instance, explaining:

> although *Coleman* directs our attention to the complaint in deciding whether Plaintiffs have satisfied the criteria for the local controversy exception to federal jurisdiction under CAFA, on the record and briefing before us, we decline to attempt to determine in the first instance whether Plaintiffs' case fits within the exception. Accordingly, we leave this issue for the district court to consider.

Dkt. #56 at 28.

ORDER
PAGE - 3

### III.   DISCUSSION

**A. Standard of Review**

When a case is filed in state court, removal is proper if the complaint raises a federal question or where there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.  28 U.S.C. §§ 1331, 1332(a).  Typically it is presumed "'that a cause lies outside [the] limited jurisdiction [of the federal courts] and the burden of establishing the contrary rests upon the party asserting jurisdiction.'"  *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (quoting *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (*per curiam*) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)) (alterations in original).  However, the United States Supreme Court has recently made clear that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, __ U.S. __, 135 S. Ct. 547, 554 (2014) (holding that the District Court erroneously applied a presumption against removal of a CAFA claim).  Thus, there is no typical presumption against removal for CAFA cases.

**B. Mass Actions Under CAFA**

Under CAFA, a district court has original jurisdiction over a putative class action when the parties are minimally diverse, the putative class consists of at least 100 members, and the aggregate amount in controversy exceeds the threshold amount of $5,000,000.  Title 28 U.S.C. § 1332(d)(2); 28 U.S.C. § 1332(d)(5)(B); *see Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020 (9th Cir. 2007).  However, certain exclusions in the Act, if applicable, require the Court to remand to state court.  In this case, Plaintiffs assert that their case falls under the "local controversy" exclusion.

The Ninth Circuit Court of Appeals has noted that this issue is one "that our circuit has rarely confronted." *Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 2015 U.S. App. LEXIS 10253, *6 (9th Cir. Jun. 18, 2015) (citing *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 883 (9th Cir. 2013) and *Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010, 1020 (9th Cir. 2011)). The Ninth Circuit further noted that its "sister circuits, likewise, have considered this issue on only a few occasions." *Id.* (citations omitted).

As an initial matter, the Court notes that there is no dispute that the general criteria for CAFA suits are present in this case – the alleged class includes all Washington residents who were purportedly subject to property damage/injury by the Defendant companies, an aggregate number which is at present in the hundreds. The claims alleged by the Plaintiffs involve substantial monetary relief, which exceeds the $5,000,000 requirement. Finally, there is minimal diversity of citizenship between class members, who are Washington citizens, and the Defendants, one of which is domiciled in Washington and one of which is domiciled in Illinois.

However, under the "local controversy" exception in CAFA, federal courts are required to remand removed CAFA cases to the originating state court when the following three conditions are met:

(I)   "greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed";

(II)  at least 1 defendant is a defendant – (aa) from whom significant relief is sought by members of the plaintiff class; (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and (cc) who is a citizen of the State in which the action was originally filed; and

ORDER
PAGE - 5

>   (III)   principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed.

28 U.S.C. § 1332(d)(4)(A)(i).  Plaintiff bears the burden of showing that this provision applies to the facts of this case.  *Benko*, 797 F.3d 1111; *Mondragon*, 736 F.3d at 883; *Coleman*, 631 F.3d at 1013; *Serrano*, 478 F.3d at 1024.

The Ninth Circuit has recognized that:

> the "local controversy exception" is a narrow one, particularly in light of the purposes of CAFA.  The Eleventh Circuit found, and we agree, that "CAFA's language favors federal jurisdiction over class actions, and CAFA's legislative history suggests that Congress intended the local controversy exception to be a narrow one."  Moreover, the Report issued by the Senate Judiciary Committee in connection with the passage of CAFA recognized, "that abuses are undermining the rights of both plaintiffs and defendants.  One key reason for these problems is that most class actions are currently adjudicated in state courts, where the governing rules are applied inconsistently (frequently in a manner that contravenes basic fairness and due process considerations) and where there is often inadequate supervision over litigation procedures and proposed settlements."

*Benko*, 789 F.3d at __ (citations omitted).

### C. Local Controversy Exception in the Instant Action

Here, Plaintiffs argue that this case falls within the "local controversy" exception because: 1) greater than two-thirds of the Plaintiffs are Washington citizens; 2) the allegations show that Plaintiffs seek significant relief from Landau; 3) Landau's conduct forms a significant basis for Plaintiff's claims; 4) Landau is a citizen of Washington, the state in which the action was originally filed; 5) Plaintiffs' principal injuries were incurred in Washington; and 6) no factually identical or similar class action has been filed against Defendants during the last three years.  Dkt. #58.

ORDER
PAGE - 6

As an initial matter, the Court notes that Defendants do not dispute that 1) greater than two-thirds of the Plaintiffs are Washington citizens; 2) Landau is a citizen of Washington, the state in which the action was originally filed; 3) Plaintiffs' principal injuries were incurred in Washington; and 4) no factually identical or similar class action has been filed against Defendants during the last three years. *See* Dkt. #65. Rather, Defendants argue that Plaintiffs cannot demonstrate this case falls within the exception because they fail to show that Landau's conduct is a significant basis for their claims, and that they seek significant relief from Landau as compared to Boeing. *Id.* Thus, the Court addresses only those latter issues in this Order and deems the remaining criteria met. *See* Local Civil Rule 7(b)(2) ("Except for motions for summary judgment, if a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit.").

Because of the relatively small body of case law pertaining to the "local controversy" exception, the analysis in this Court is a difficult one. However, the Ninth Circuit Court of Appeals recently provided guidance with respect to the issues presented in this case. In *Benko*, *supra*, the Court of Appeals explained:

> **2. Significant Defendant Test**
>
> We next consider whether Meridian's conduct constitutes "a significant basis" for the Plaintiffs' claims and whether the Plaintiffs seek "significant relief" from Meridian. 28 U.S.C. § 1332(d)(4)(A)(i)(II). When construing the meaning of a statute, we begin with the language of that statute. The Supreme Court has stated that "a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-54, 112 S. Ct. 1146, 117 L. Ed. 2d 391 (1992). If the statutory text is ambiguous, we employ other tools, such as legislative history, to construe the meaning of ambiguous terms. *See United States v. Gonzales*, 520 U.S. 1, 6, 117 S. Ct. 1032, 137 L. Ed. 2d 132 (1997).
>
> "When a word is not defined by statute, [the Supreme Court] normally construe[s] it in accord with its ordinary or natural meaning," which can often be discerned by reference to the dictionary definition of that word.

ORDER
PAGE - 7

*Smith v. United States*, 508 U.S. 223, 228, 113 S. Ct. 2050, 124 L. Ed. 2d 138 (1993). Several dictionaries offer complementary definitions of "significant," with each suggesting that the word essentially means "important" or "characterized by a large amount or quantity." For example, Black's Law Dictionary states that "significant" means "[o]f special importance; momentous, as distinguished from insignificant." Black's Law Dictionary (10th ed. 2014). The American Heritage Dictionary defines the word as "having or expressing meaning; meaningful," "having or likely to have a major effect; important," and "fairly large in amount or quantity." American Heritage Dictionary 1619 (4th ed. 2000). We assume that, in CAFA, the word "significant" is used consistently and with the same meaning, as a modifier of "basis for the claims" and "relief." *See Atl. Cleaners & Dyers v. United States*, 286 U.S. 427, 433, 52 S. Ct. 607, 76 L. Ed. 1204 (1932) ("[T]here is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning.").

To determine if the "basis for the claims" against Meridian is important or fairly large in amount or quantity, we compare the allegations against Meridian to the allegations made against the other Defendants. CAFA clarifies that we should look at a defendant's "basis" in the context of the overall "claims asserted." 28 U.S.C. § 1332(d)(4)(A)(i)(II)(bb). This comparative approach is consistent with the reasoning of the Third Circuit in *Kaufman*, 561 F.3d at 156 ("Whether [the significant basis] condition is met requires a substantive analysis comparing the local defendant's alleged conduct to the alleged conduct of all the Defendants."). *See also Opelousas*, 655 F.3d at 363 (requiring "more detailed allegations or extrinsic evidence detailing the local defendant's conduct in relation to the out-of-state defendants").

Meridian is one of just six Defendants referred to in the SAC. In terms of the overall class, the Plaintiffs allege that "Meridian conducted illegal debt collection agency activities with respect to thousands of files each year," and that Meridian's activities constituted between 15 to 20% of the total debt collection activities of all the Defendants. In *Evans*, the Eleventh Circuit reasoned that the "significant basis" provision was not satisfied because the plaintiffs had not shown that "a significant number or percentage of putative class members may have claims against [a local defendant]." *Evans*, 449 F.3d at 1167. By contrast, Meridian foreclosed between 15 to 20% of the homes of all Plaintiffs in the class. Several Plaintiffs then have colorable claims against Meridian.

To determine if the Plaintiffs claim "significant relief" from Meridian, we look to the remedies requested by the Plaintiffs in the SAC. *See Coleman*, 631 F.3d at 1020. The Plaintiffs claim general damages of $10,000 from Meridian, and punitive damages as a result of deceptive trade practices and

ORDER
PAGE - 8

fraud. The Plaintiffs estimate that the total damages recoverable from Meridian are between $5,000,000 and $8,000,000. Meridian also concedes that the Plaintiffs seek equitable relief, which would significantly increase the overall value of the judgment against Meridian. *Cf. id.* ("Further, the complaint seeks injunctive relief against [the local defendant]. There is nothing in the complaint to suggest either that the injunctive relief sought is itself insignificant, or that [the local defendant] would be incapable of complying with an injunction."). The amounts sought are sufficient to show that the Plaintiffs claim "significant relief" from a local defendant.

Our analysis is further buttressed by the Senate Judiciary Committee's findings pertaining to the "local controversy exception." The Committee Report stated that "[t]his provision is intended to respond to concerns that class actions with a truly local focus should not be moved to federal court under this legislation because state courts have a strong interest in adjudicating such disputes. . . . [A] federal court should bear in mind that the purpose of each of these criteria is to identify a truly local controversy – a controversy that uniquely affects a particular locality to the exclusion of all others." S. Rep. No. 109-14, 39, 2005 U.S. Code Cong. & Admin. News 3, 38.

In this case, a class of exclusively Nevada Plaintiffs has filed suit against six Defendants, one of which is Nevada domiciled. The alleged misconduct took place exclusively in the state of Nevada. The one Nevada domiciled Defendant was allegedly responsible for between 15-20% of the wrongs alleged by the entire class. The Plaintiffs have met their burden to show that this case qualifies for the "local controversy exception."

*Benko*, 789 F.3d 1111, at **12-16.

This Court finds the instant matter analogous to *Benko* for several reasons. First, a review of Plaintiffs' Amended Complaint demonstrates that Landau's conduct forms a significant basis for their claims. Landau is one of only two Defendants in this action.[3] Second, Plaintiffs allege that:

> 4.10    Defendants Boeing Company and Boeing Commercial Airplanes hired, delegated, contracted with, partnered with, or otherwise shared the responsibilities with Landau Associates for the investigation and remediation of the Boeing Auburn Plant.

---

[3] As noted above, the Court considers Boeing Company and Boeing Commercial Airplanes one Defendant. *See* Page 1, *supra*, at fn. 1.

ORDER
PAGE - 9

4.11     In or about 2002, Defendant Boeing Company, Boeing Commercial Airplanes, and Landau Associates identified a plume of volatile organic chemicals ("VOCs"), including TCE and PCE and their degradation products including vinyl chloride ("VC") in the groundwater at the Boeing Auburn Plant.  Defendants identified building 17-05 of the Boeing Auburn Plant as the likely source of the plume of hazardous substances.  This plume was noted by Defendants Boeing Company, Boeing Commercial Airplanes, and Landau Associates to have moved off of the Boeing Auburn Plant property and to be continuing to move off the property in the shallow groundwater in a north and/or northwest direction.

4.12     Defendants Boeing Company, Boeing Commercial Airplanes, and Landau Associates knew at that time that the movement of these hazardous substances posed a threat to the health and rights of nearby property owners and residents and their properties.

4.13     Defendants Boeing Company, Boeing Commercial Airplanes, and Landau Associates knew at that time that the presence of these hazardous substances in groundwater would contaminate soil and escape through soil into the air on nearby properties and into the homes and buildings thereon.

4.14     With this knowledge, Defendants had a duty to further investigate, track and document, remediate, and/or otherwise clean up the hazardous substances and to investigate further potential migration of the hazardous substances.  Defendants had a further duty to take responsible actions to contain and/or minimize the movement of the hazardous substances off the Boeing Auburn Plant property and onto nearby properties and/or to warn of the presence and movement of such hazardous substances.

4.15     Defendants Boeing Company, Boeing Commercial Airplanes, and Landau Associates failed to take reasonable actions in investigating, testing, tracking, documenting, remediating, cleaning up, containing, minimizing movement, and/or warning nearby property owners and residents of the presence of and movement of hazardous substances into their neighborhoods, properties and homes.

4.16.    In or about 2009, Defendant Boeing Company, Boeing Commercial Airplanes, and Landau Associates identified an [sic] second plume of VOCs including TCE, PCE and their degradation products including VC.  Defendants failed to identify the probable sources of the contamination or where on the Boeing Auburn Plant this plume originates.

4.17     This plume was noted by Defendants Boeing Company, Boeing Commercial Airplanes, and Landau Associates to have moved off of and to be continuing to move off of the Boeing Auburn Plant property in the

ORDER
PAGE - 10

> groundwater. Again, Defendants failed to take reasonable actions in investigating, testing, tracking, documenting, remediating, cleaning up, containing, minimizing movement, and/or warning nearby property owners and residents of the presence of and movement of hazardous substances into their neighborhoods, properties and homes.

Dkt. #1-1 at ¶ ¶ 4.10-4.17. These allegations support the substance of Plaintiffs' legal allegations, are asserted against both Defendants equally, and apply to all of the current Plaintiffs.[4] Further, looking at the claims as a whole, negligence claims account for 50% of the claims asserted by Plaintiffs (albeit in the form of one claim of negligence against Boeing and one claim of negligence against Landau). As compared to the other two claims against Boeing, for Nuisance and Trespass, particularly in light of the above factual allegations, the Court finds that the negligence claim against Landau forms a significant basis for the relief sought by Plaintiffs.

Likewise, the Plaintiffs claim equal relief from both Defendants. Dkt. #1-1 at 61, *Request for Relief*. They seek judgment against each Defendant for general and special damages, and Boeing itself asserts in its Notice of Removal that each Plaintiff seeks eight categories of damages relating to alleged contamination, investigation, and clean-up: their property's lost value; remediation costs; repair or restoration costs; the value of the continuous trespass and interference with her use of her property; medical costs; the costs of future medical monitoring; attorneys' fees; and consequential damages, which totals more than $75,000 for each claim. Dkt. #1 at ¶ 17. The amounts sought are sufficient to show that the Plaintiffs claim "significant relief" from a local defendant, Landau. Defendants argue that Plaintiffs have failed to allege joint and several liability, and therefore cannot demonstrate that Plaintiffs seeks

---

[4] The remainder of the factual allegations set forth the history of the Boeing Auburn plant and its manufacturing processes and the way it historically handled chemicals used in those processes, and facts related to soil testing on the subject properties and homes and the chemicals allegedly discovered thereon. *See* Dkt. #1-1 at ¶ ¶ 4.1-4.9 and 4.18-4.24.

ORDER
PAGE - 11

significant relief from Landau as opposed to Boeing. *See* Dkt. #65 at 17-20. However, this ignores that Plaintiffs have pleaded separate negligent claims against Boeing and Landau and seek to hold each Defendant responsible for its own negligence and for any monetary amounts resulting therefrom. Accordingly, the Court is not persuaded by Defendants' argument.

As the Court of Appeals found in *Benko*, so too does this Court find that its decision is "further buttressed by the Senate Judiciary Committee's findings pertaining to the 'local controversy exception.'" *Benko*, 789 F.3d 1111, at *16. It is clear from the facts and allegations made in this case that this involves a potential class action with a truly local focus that particularly affects a local area of the State of Washington to the exclusion of all others. *Id.*

Here, a class of exclusively Washington Plaintiffs has filed suit against two Defendants, one of which is Washington domiciled. The alleged misconduct took place exclusively in the State of Washington, and Plaintiffs allege that the Washington Defendant was equally responsible for the negligence alleged by the entire class and which constitutes 50% of the class claims. Plaintiffs also seek equal relief from Defendants for their alleged negligence. Under these circumstances, the Court finds that Plaintiffs have met their burden to show that this case qualifies for the "local controversy exception."

**D. Landau Joinder**

The Court previously determined, and the Ninth Circuit Court of Appeals affirmed, that Landau has not been fraudulently joined in this action and therefore this Court lacks diversity jurisdiction. Accordingly, there is no alternative basis for jurisdiction in this Court.

///

///

ORDER
PAGE - 12

## IV.   CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby ORDERS:

1) Plaintiffs' Motion to Remand (Dkt. #58) is GRANTED, and this case is again REMANDED to the King County Superior Court.

2) This matter is now CLOSED.

Dated this 13th day of August 2015.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE